UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

KHUONG HUYNH,

Petitioner,

v.                                                CAUSE NO. 3:26cv300 DRL-SJF

BRIAN ENGLISH *et al.*,

Respondents.

OPINION AND ORDER

Immigration detainee Khuong Huynh, by counsel, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging that he is unlawfully confined in violation of the laws or Constitution of the United States. The respondents answered the petition, and Mr. Huynh filed a reply. The petition is ready to be decided.

Mr. Huynh is a Vietnamese citizen who entered the United States in 1991 [7-1]. In February 2009, he was federally convicted of conspiring to possess with the intent to distribute 100 kilograms or more of marijuana. On March 15, 2012, an immigration judge ordered him removed to Vietnam. On June 21, 2012, United States Immigration and Customs Enforcement (ICE) released him on a supervision order. On February 15, 2026, ICE detained him again, and he is currently held at the Miami Correctional Facility.

Mr. Huynh has submitted the 2008 repatriation agreement between the United States and Vietnam in which Vietnam agreed to accept only Vietnamese nationals who had entered the United States after July 12, 1995 [1-3]. He also submitted a statistical report for the purpose of showing that, between 2021 and 2023, "very few pre-1995 Vietnamese citizens

could be removed as travel documents were not issued to them by Vietnam despite long periods of detention" [1-4].

On March 16, 2026, the respondents said the government intended to remove Mr. Huynh to Vietnam but that it was unlikely that he would be removed within the next thirty days. The respondents also provided a declaration from an ICE official, attesting, that, on March 12, 2026, ICE received a completed application for travel documents from Mr. Huynh and that it is quickly assembling a formal request for Vietnam [7-2]. The ICE official also says, since February 2025, "Vietnam has issued all travel documents that ICE has requested" and, during fiscal year 2025,[1] "Vietnam accepted 699 removals including 327 of them who like [Mr. Huynh] arrived in the United Stated prior to 1995."

The respondents first argue that the court lacks subject matter jurisdiction over Mr. Huynh's habeas petition under 8 U.S.C. § 1252(g) and § 1252(b)(9). This court has thoroughly considered its jurisdiction to review post-removal-order immigration detention. For the reasons previously given, jurisdiction is secure insofar as this opinion goes. *See Liang, v. English*, No. 3:25cv1052, 2026 WL 835853, 1 (N.D. Ind. Mar. 26, 2026) (Leichty, J.).

Turning to the merits, 8 U.S.C. § 1231(a)(6) gives the government the authority to detain a noncitizen while it effectuates a removal order. All noncitizens must be detained for a 90-day "removal period," which for Mr. Huynh ended fourteen years ago. *See* 8 U.S.C. §§ 1231(a)(1)(A), (a)(2)(A). Beyond this 90-day period, certain classes of noncitizens may be

---

[1] The fiscal year for ICE begins on October 1 and runs through September 31. *See* U.S. Immigration and Customs Enforcement, *Fiscal Year 2024 Annual Report*, (Dec. 19, 2024), available at https://www.ice.gov/doclib/eoy/iceAnnualReportFY2024.pdf.

detained even longer—what the statute calls inadmissible aliens (under 8 U.S.C. § 1182), those who have violated their nonimmigrant status conditions (under 8 U.S.C. § 1227(a)(1)(C)), those who have committed certain crimes, such as aggravated felonies, drug trafficking, or illegal firearm offenses (under 8 U.S.C. § 1227(a)(2)), those removable for national security or foreign relations reasons (under 8 U.S.C. § 1227(a)(4)), and those whom the Attorney General determines to be a risk to the community or unlikely to comply with the order of removal. 8 U.S.C. § 1231(a)(6); *see also Johnson v. Arteaga-Martinez*, 596 U.S. 573, 579 (2022). These noncitizens "may be detained beyond the removal period" or released on conditions of supervision. 8 U.S.C. § 1231(a)(6).[2] Given his drug conspiracy conviction, Mr. Huynh's detention years ago was authorized by § 1231(a)(6). The Warden likewise relies on this same statute as the basis for his current detention.

"The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law," and "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). To avoid a constitutional due process problem with § 1231(a)(6), and specific to a noncitizen who is present within this country and who is ordered removed, the law requires that his detention be limited to a reasonable time—namely "a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689; *see also id.* at 682, 690-91.

---

[2] For noncitizens who don't fall in these categories, if they are not removed during the 90-day removal period, they must be released, subject to conditions of supervision. 8 U.S.C. § 1231(a)(3).

Any § 1231(a)(6) detention of a present-but-ordered-removed noncitizen has this limitation, as it guards against the possibility that he might be indefinitely detained should his removal not be reasonably achievable. His indefinite detention would raise a serious constitutional problem. *Id.* at 690; *see also Clark v. Suarez Martinez*, 543 U.S. 371, 378 (2005) (same). In short, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699.

The historic writ of habeas corpus grants a federal court the authority to review a noncitizen's detention and to decide independently whether "a set of particular circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal." *Id.*; *see also* 28 U.S.C. § 2241(c)(3). "In answering that basic question, the habeas court must ask whether detention exceeds a period reasonably necessary to secure removal" and "should measure reasonableness primarily in terms of the statute's basic purpose, namely assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. When removal proves reasonably foreseeable, the court can consider other factors (such as risk of crime) and often will deny habeas relief; whereas, when removal seems attenuated or unlikely, the court will order the individual's release, albeit conditioned on appropriate terms of supervision and the noncitizen's compliance with these terms. *See id.* at 699-700. After all, the choice isn't between detention and a noncitizen "living at large," but between detention and a noncitizen's supervised release on conditions that he cannot violate. *Id.* at 696.

The law materially defers these difficult judgments to the Executive Branch for a six-month period during which detention is considered presumptively reasonable to execute a

4

removal order. *Id.* at 700-01. Even thereafter, the court listens with care when the government's "foreign policy judgments" — such as the status of repatriation negotiations — are implicated and otherwise affords "appropriate leeway when its judgments rest upon foreign policy expertise." *Id.* at 700. A noncitizen "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. But "once [he] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Id.* (cleaned up); *see also Suarez Martinez*, 543 U.S. at 385-86.

The court need not engage the same constitutional dilemma that § 1231(a)(6) could present merely because this is a second period of detention and not his first. *See Zadvydas*, 533 U.S. at 690. The court may consider not just what led to his original detention and release years ago, to the extent still pertinent, but also what circumstances newly exist today. Despite the old adage, past isn't always prologue in this context, and just because removal couldn't occur before doesn't mean it can't reasonably occur today under renewed efforts. At the same time, nothing in § 1231(a)(6) and nothing in *Zadvydas* suggest that the mere passage of time erases everything about the initial showing to make it all irrelevant. *See also Vu v. English*, No. 3:25cv999, 2026 WL 194171, 4-5 (N.D. Ind. Jan. 26, 2026) (Leichty, J.); *cf. Kem v. Noem*, No. 3:25cv997, 2026 WL 100566, 3-4 (N.D. Ind. Jan. 14, 2026) (Leichty, J.).[3] After

---

[3] No one should read either *Vu* or *Kem* as indicating that an original showing always remains gospel or shifting the burden.

all, as the period of confinement grows, what qualifies as a reasonably foreseeable future conversely must shrink. *Id.* at 701.

Notably, the parties dispute the manner in which the six-month presumptively reasonable period should be calculated. The respondents argue that the six-month period should run from the start of the latest period of detention. Mr. Huynh argues that the six-month period expired despite the fact that the cumulative total of his time spent in initial detention and the immediate period of detention spans only about five months. Consequently, Mr. Huynh appears to argue that the period should run from the removal date without any tolling during his time on supervised release.

To some, "*Zadvydas* and the relevant regulations do not address whether the six-month presumptive reasonability period is cumulative across periods of detention or whether the period restarts upon each instance of detention." *Singhavara v. Noem*, 813 F. Supp.3d 827, 833 (N.D. Ill. 2025). "Most courts to consider the issue have concluded that the *Zadvydas* period is cumulative, motivated by a concern that the federal government could otherwise detain aliens indefinitely by continuously releasing and re-detaining them." *Abuelhawa v. Noem*, 811 F. Supp.3d 847, 855-56 (S.D. Tex. 2025) (collecting cases). Whether *Zadvydas* should be extended in this way or alternatively curtailed or even altogether revisited at its core, as it continues to present mischievous questions, is an academic matter today because, no matter how the court slices the record, Mr. Huynh remains within a period of detention that the law calls presumptively reasonable. *See Zadvydas*, 533 U.S. at 701. To the other debate, the court has not been presented with any authority or cogent

rationale for counting time on supervision toward the calculus of detention. Most often, supervision is seen as an alternative to detention, not an equivalent.

Perhaps the mere fact that Mr. Huynh remains within the presumptively reasonable period set by law would be enough for some to deny his petition outright, though one would need to wrestle first with the Supreme Court's conscious choice and repeated use of the word "presumption" throughout *Zadvydas* first. *Compare Okpoju v. Ridge*, 115 F. Appx. 302, 302 (5th Cir. 2004) (premature petition), *and Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) (premature petition) *with Cesar v. Achim*, 542 F. Supp.2d 897, 902-05 (E.D. Wis. 2008) (rebuttable presumption), *and Cruz Medina v. Noem*, 794 F. Supp. 3d 365, 373-77 (D. Md. 2025) (rebuttable presumption), *and Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 395-98 (D.N.J. 2025) (rebuttable presumption), *appeal docketed* No. 25-2628 (3rd Cir. Aug. 25, 2025). For today, the court follows *Zadvydas* because, even if Mr. Huynh's petition could be called ripe, it falls short under this current law.

The respondents identify Vietnam as the only country under consideration for removal. As evidence that his removal will not occur within the reasonably foreseeable future, Mr. Huynh offers his initial period of detention and his subsequent years on supervised release in which the government did not remove him. He also offers the 2008 repatriation agreement that excludes individuals like him who entered the United States before 1995 and the statistics purporting to show that, between 2021 and 2023, "very few pre-1995 Vietnamese citizens could be removed as travel documents were not issued to them by Vietnam despite long periods of detention."

7

Though the court appreciates that any period of detention may prove to him disconcerting, "Congress may make rules as to [noncitizens] that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 522 (2003); *see also Reno v. Flores*, 507 U.S. 292, 305-06 (1993). "[D]etention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523; *see also Wong Wing v. United States*, 163 U.S. 228, 235 (1896). Three months before and two months now do little to override the presumptive reasonableness of his detention. Mr. Huynh does not adequately explain the context of his statistics or provide any meaningful statistical or comparator analysis, so it is unclear whether they support his perspective even if they could be extrapolated to today's world.

In petitions past, the government has been tight-lipped about its successes or failures in repatriating Vietnamese citizens. But not so here. By all accounts on this record, Vietnam has issued all travel documents requested by ICE since February 2025 [7-2], and "all" reasonably captures the prospect of another request for Mr. Huynh, particularly when he remains in the window of reasonable turnaround. ICE proceeded ahead after receiving Mr. Huynh's completed application just a month ago. There is an administrative process to follow, and that does not happen overnight. Thereafter it reportedly takes about 30 days for travel papers from Vietnam to issue. The prospect of success is not nil; indeed, from October 2024 through September 2025, Vietnam accepted 699 individuals for removal from the United States, including 327 individuals who entered the United States before 1995—those in the same class as Mr. Huynh. Today's record provides no evidence—no evidence with any real currency—of any reasonable barrier to removal. The court finds that Mr. Huynh

has not met his burden; even so, the government has soundly rebutted it. The court must deny his habeas petition on this basis.

Alternatively, Mr. Huynh argues that he is entitled to habeas relief because the government failed to comply with regulations governing revocation of his supervised release, particularly under 8 C.F.R. § 241.13(i)(3), in that (1) ICE must notify a noncitizen of the reasons for revocation, (2) ICE must conduct an informal interview promptly after the person is returned to custody to afford him an opportunity to respond to these reasons and submit evidence, and (3) if detention continues, ICE must conduct a full custody review. To his point, "federal agencies are required to follow their own regulations." *Zelaya Diaz v. Rosen*, 986 F.3d 687, 690 (7th Cir. 2021) (citing *Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)); *accord Samirah v. Holder*, 627 F.3d 652, 664 (7th Cir. 2010) ("rules promulgated by a federal agency, which regulate the rights and interests of others, are controlling upon the agency"); *see also United States v. Nixon*, 418 U.S. 683, 696 (1974).

Noncitizens and the government alike must comply with our immigration laws, as they are written and as they must work within constitutional demands, not least when a person's freedom hangs in the balance. Due process requires merely that the procedures born of regulation be fairly afforded. *See Accardi*, 347 U.S. at 266-68; *see, e.g., Jideonwo v. I.N.S.*, 224 F.3d 692, 697 (7th Cir. 2000); *Montilla v. I.N.S.*, 926 F.2d 162, 166 (2d Cir. 1991). The court will assume for today that it may review regulatory compliance of the ilk raised here under principles of due process, no matter the seeming debate of other courts whether habeas corpus is the proper mechanism to do so.

At the same time, there is a real question whether "victory" on this regulatory issue would entitle the petitioner "to any change in the duration or even the location of his confinement." *Richmond v. Scibana*, 387 F.3d 602, 605 (7th Cir. 2004). Suppose the court found a technical regulatory snafu toward an otherwise compliant process of securing a noncitizen's custody for purposes of removal; that might presuppose some petit harm, redressable in proper form or inviting its cure, if not harmless altogether, but it would not alone explain why his custody would violate the still-sound basis for it today under § 1231(a)(6). In granting habeas relief, "the remedy should be appropriate to the violation," *Waller v. Georgia*, 467 U.S. 39, 50 (1984), and not every stubbed toe or skipped beat will justify release. Habeas corpus relief, housed within the court's equitable powers, remains as it always was an "adaptable remedy" — one where "release need not be the exclusive remedy" and indeed one where release will not always be the "appropriate one." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008); *see also Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) ("immediate physical release is not the only remedy under the federal writ of habeas corpus"); *accord Martinez Camargo v. I.N.S.*, 282 F.3d 487, 491 (7th Cir. 2002) ("not every violation of an agency regulatory requirement results in the invalidation of all subsequent agency action").

First, Mr. Huynh contends that his notice of revocation inadequately explained the reasons for revoking his supervision. He says the notice failed to identify any actions by the government to remove him before his re-detention. The reason provided on the notification was that ICE was "seeking a travel document to effect [his] expeditious removal to Vietnam" [7-1]. The regulation governing revocation requires a noncitizen to be "notified of the reasons for revocation of his or her release" and requires ICE to conduct an initial informal

interview upon the person's return to custody "to afford the alien an opportunity to respond to the reasons for revocation," including "any evidence or information that he or she believes shows there is no significant likelihood he or she [can] be removed in the reasonably foreseeable future[.]" 8 C.F.R. § 241.13(i)(3). Nothing in the regulatory language requires that ICE specifically identify actions taken to remove an individual beforehand, and the notice stated ICE's reason quite plainly. As this record bears out, ICE has new circumstances that give rise to its belief that it can succeed in removal in the near term.

Second, Mr. Huynh received an initial informal interview to respond to the reasons for revocation within minutes of his revocation [7-1], though he complains that so soon meant too fast because he lacked a meaningful opportunity to respond to the reason for revocation. Whether this might present as problematic in another case, even today and even with the benefit of counsel, Mr. Huynh has not presented evidence to show that he cannot be removed in the reasonably foreseeable future. Release would be an immoderate way to address what is either harmless or futile.

Third, Mr. Huynh argues that the government failed to conduct a custody review as required by the regulations. The government revoked his supervision under 8 C.F.R. § 241.13(i)(2), which explains that this "custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release," else § 241.4 governs an "alien's continued detention pending removal" after the informal interview. The "normal review process will commence with notification to the alien of a records review and scheduling of an interview, which will ordinarily be expected to occur within approximately

11

three months after release is revoked." 8 C.F.R. § 241.4(*l*)(3). The court cannot find that the government has violated regulations by failing to provide this after less than two months since his revocation. His regulatory concerns thus afford no basis for habeas relief.

Last in his petition, Mr. Huynh seeks a permanent injunction requiring the respondents to comply with statutory and regulatory requirements during any future revocations or periods of re-detention. The court will not prejudge cases before they present, and its jurisdiction exists so long as a ripe controversy exists, appreciating that habeas corpus can be used to "attack future confinement and obtain future releases." *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973). But here, there is no indication that the government is likely to detain him unlawfully in the future, particularly so when his confinement now is constitutionally proper and when his removal in the near term seems yet likely. The speculative possibility of future confinement offers no likelihood of success, so the court declines to issue a permanent injunction.

For these reasons, the court DENIES the habeas petition [1] and DIRECTS the clerk to close this case.

SO ORDERED.

April 17, 2026                                   s/ *Damon R. Leichty*
                                                 Judge, United States District Court

12